Opinion issued June 20, 2002












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00467-CV

____________


LARRY W. THOMAS AND MARILYN F. THOMAS, Appellants


V.


COMPASS BANK, Appellee






On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2000-05613






O P I N I O N

 In their suit for breach of contract and violations of the Texas Deceptive Trade
Practices-Consumer Protection Act (DTPA), appellants, Larry Thomas and Marilyn
Thomas, appeal from the trial court's rendition of summary judgment in favor of
appellee, Compass Bank (Compass). The case involves the Thomases' default on a
commercial deed of trust and promissory note executed by the parties.

 In three points of error, the Thomases argue the trial court erred in granting
summary judgment against them because: (1) Compass violated the Texas Property
Code by accelerating the deed of trust without giving the Thomases an opportunity
to cure the default, (2) a material fact issue existed with respect to whether Compass
waived its right to accelerate the deed of trust, and (3) a material fact issue existed
with respect to the Thomases' claims under the DTPA and the Texas Debt Collection
Act.

 We affirm.

Facts and Procedural Background


 In June 1995, the Thomases obtained a mortgage from West University Bank
in the amount of $66,000. The mortgage was secured by the Thomases' residence,
which is located at 3748 Bellaire Boulevard. Compass is the successor, by merger,
to West University Bank. (1)

 In the autumn of 1999, the Thomases became delinquent on their mortgage
payments after failing to make the November and December payments. (2) On
December 7, 1999, the Thomases received a letter from Compass's attorney notifying
them, in part, as follows:

 As a result of your failure to cure your default in the payment and
performance under the Note and Deed of Trust, [Compass] has
accelerated the maturity date of the Note and hereby demands payment
in full of the entire outstanding and unpaid balance of principal and all
accrued interest.


The outstanding amount of the mortgage totaled approximately $59,000. The letter
also informed the Thomases they could dispute the validity of the debt, in whole or
in part, within 30 days, and that Compass intended to pursue foreclosure on or before
January 10, 2000 unless "the full amount due and owing is not paid . . . ."

 On December 16, 1999, the Thomases received a letter from Robert Burger, a
representative of Compass, notifying them that they were in breach of the mortgage
note by their failure to make their monthly payments. Burger's letter gave the
Thomases until January 5, 2000 to "cure this breach" by forwarding a payment of
$2,156.25 to Compass at the address shown on the letter. The letter also informed the
Thomases that, unless they cured their breach, all sums secured by the mortgage
would then become "due and payable without further notice" and a foreclosure
proceeding would be commenced on the property.

 According to Larry Thomas, he was prepared to pay the amount indicated in
Burger's letter and called Burger's office and the office of another representative of
Compass, Carl Scott, but received no reply until after January 5, 2000. At that time,
Scott told Thomas that Compass would no longer accept any partial payments.

 On January 10, 2000, the Thomases received another letter from Compass's
attorney, informing them again that, as a result of their default, Compass was
accelerating the maturity date of the note and demanding payment of the entire
outstanding debt. The letter also enclosed a notice of substitute trustee's sale, which
stated that a public foreclosure auction of the property was scheduled for February
1, 2000.

 On the day of the scheduled foreclosure, the Thomases brought suit against
Compass to enjoin the bank from foreclosing on their home. Without hearing
evidence on the matter, the trial court granted the Thomases a temporary restraining
order. Compass did not contest that order. Subsequently, the Thomases obtained a
new loan and repaid Compass, and no foreclosure ever occurred. The Thomases then
sued Compass for breach of contract and violations of the DTPA and Debt Collection
Act, on the grounds that Compass's original foreclosure notice was defective for
failing to provide an opportunity to cure their default and alleging damages for having
to refinance their home at a higher interest rate. (3) Compass denied the Thomases'
allegations and subsequently filed "no evidence" motions for summary judgment
which were granted by the trial court.

Standard of Review


 Under rule 166a(i), a party is entitled to a no evidence summary judgment if,
after adequate time for discovery, there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of
proof at trial. Tex. R. Civ. P. 166a(i). Thus, a no evidence summary judgment is
similar to a directed verdict. Flameout Design & Fabrication, Inc. v. Pennzoil
Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st Dist.] 1999, no pet.). 
The motion for summary judgment may not be general, but must state the elements
on which there is no evidence. Tex. R. Civ. P. 166a(i). Upon a proper motion for
summary judgment, the trial court must grant the motion unless the non-movant
produces more than a scintilla of evidence raising a genuine issue of material fact on
each of the challenged elements. See id.; Macias v. Fiesta Mart, Inc., 988 S.W.2d
316, 317 (Tex. App.--Houston [1st Dist.] 1999, no pet.). In reviewing a summary
judgment, we must indulge every reasonable inference in favor of the non-movant
and resolve any doubts in its favor. Flameout, 994 S.W.2d at 834.

Breach of Contract Claim


 In their first issue, the Thomases contend the trial court erred in granting
summary judgment in favor of Compass because Compass violated section 51.002(d)
of the Property Code and breached its contract with the Thomases by accelerating the
deed of trust and promissory note without providing the Thomases with an
opportunity to cure their default.

 Section 14(a) of the deed of trust executed by the Thomases reads, in relevant
part, as follows:

 [I]f default is made in the payment of any part of the Indebtedness
secured hereby or in the performance of any of the convenants and
agreements contained in this instrument or in the Note . . . then the entire
Indebtedness secured hereby shall, at once or at any time thereafter
while any part of said Indebtedness remains unpaid, at the option of any
Beneficiary, become due and payable without demand or notice, except
as otherwise provided by law (all rights to demand and notice not
required by law being hereby expressly waived) . . . .


(Emphasis added.) The promissory note signed by the Thomases contains similar
provisions and reads, in relevant part, as follows:

 AT THE OPTION of the holder hereof, all unpaid amounts of principal
and interest shall become immediately due and payable, without
presentment or demand or notice to the undersigned . . . upon the
occurrence of any of the following events: (i) default in the payment or
performance of any liability, obligation or duty of the undersigned to the
holder of this Note . . . .


 EXCEPT AS OTHERWISE provided by applicable law, [the Thomases]
. . . expressly waive notice of default and of intention to accelerate
maturity or to foreclose . . . and shall be jointly, severally, directly and
primarily liable for the payment of all sums owing and to be owing
hereon, regardless of and without any notice, diligence, act or omission
as or with respect to the collection of any amount called for hereunder
or in connection with any right, lien, interest or property at any and all
times had or existing as security for any amount called for hereunder.


(Emphasis added.) Thus, by the express terms of the deed of trust and promissory
note, the Thomases contractually waived a right to any notice of default and
acceleration of the note, unless such notice is otherwise required by law.

 Section 51.002(d) of the Property Code provides as follows:

 Notwithstanding any agreement to the contrary, the holder of the debt
shall serve a debtor in default under a deed of trust or other contract lien
on real property used as the debtor's residence with written notice by
certified mail stating that the debtor is in default under the deed of trust
or other contract lien and giving the debtor at least 20 days to cure the
default before notice of sale can be given under Subsection (b).


Tex. Prop. Code Ann. § 51.002(d) (Vernon 1995) (emphasis added). (4) Based on the
record presented in this case, Compass was required to give the Thomases written
notice of their default and at least 20 days to cure the default before giving notice of
sale.

 The Thomases contend the earlier December 7, 1999 letter from Compass's
attorney did not meet the requirements of section 51.002(d) and that, in sending the
letter, Compass breached its contract by failing to provide the Thomases 20 days to
cure their default before accelerating the full amount of the note. Compass argues
section 51.002(d) does not require it to provide 20 days notice before accelerating the
full amount of the note; rather, the statute requires Compass to give the Thomases 20
days to cure their default before providing a notice of sale. In the present case,
Compass contends "the default" was the accelerated full amount of the note.

 In either case, we need not reach the issue. Burger's December 16, 1999 letter
informed the Thomases they were in default on the mortgage note and instructed them
they could cure their breach by forwarding $2156.25 to Compass by January 5, 2000
at an address explicitly set out in the letter. According to Burger's letter, only if they
did not do so would all sums owing become "due and payable without further notice"
and a foreclosure proceeding be commenced. Larry Thomas stated in his affidavit
that, although he was prepared to pay this amount before the January 5, 2000
deadline, he did not do so.

 We do not agree with the Thomases interpretation of section 51.002(d). Their
interpretation ignores the 1993 amendment of the statute, which deleted the language
providing a 20-day opportunity to cure any default before acceleration of the full
amount could be made. The current version of the statute contains no requirement of
written notice of acceleration. However, even if the Thomases' interpretation of
section 51.002(d) was still correct, Compass complied with that interpretation in its
December 16, 1999 letter. The Thomases did not cure their default by the terms set
out in that letter within 20 days, and Compass then accelerated the full amount of the
note. Based on the summary judgment evidence presented, we conclude the
Thomases presented no evidence to raise a fact issue regarding a violation by
Compass of the Property Code or a breach of the terms of the deed of trust or the
promissory note. Accordingly, the trial court did not err in granting a no evidence
summary judgment as to the Thomases' breach of contract claim.

 We overrule the first issue.

Waiver


 In their second issue, the Thomases argue summary judgment was improper
because a material fact issue existed concerning whether Compass waived its rights
under its initial notice of acceleration by its later correspondence and communications
to the Thomases. They contend the inconsistencies between the December 7, 1999
letter from Compass's attorney and the December 16, 1999 letter from Burger
resulted in a waiver of Compass's right to accelerate the full amount of the note.

 Waiver is an affirmative defense, not a cause of action, and does not operate
to create liability. Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785
(Tex. 1988). Because we hold the Thomases presented no evidence to support their
claim that Compass breached the deed of trust or the promissory note, we overrule
their second issue.

Debt Collection Act and DTPA Claims


 In their third issue, the Thomases argue Compass violated the terms of the Debt
Collection Act (5) and the DTPA (6) by sending a false foreclosure notice.

 Because we hold the Thomases presented no evidence to support their claim
for breach of contract against Compass, we overrule their third issue.

Conclusion



 We affirm the judgment of the trial court.





 Terry Jennings

 Justice



Panel consists of Justices Jennings, Radack, and Smith. (7)


Do not publish. Tex. R. App. P. 47.
1. The Thomases also obtained a home equity loan from West University Bank
in the amount of $99,000. That loan is not the subject of this suit.
2. At the same time, the Thomases were five payments behind on their separate
home equity loan. 
3. The Thomases refinanced their mortgage at a rate of 15.141%. Their original
mortgage was financed at a rate of 8.875%.
4. Before its amendment in 1993, section 51.002(d) read, in part, as follows: 
"The debtor must be given at least 20 days to cure the default before the entire
debt is due and the notice of sale is given." (Emphasis added.)
5. See Tex. Fin. Code Ann. § 392.001 (Vernon 1998 and Supp. 2002).
6. See Tex. Bus. & Commerce Code Ann. § 17.41 (Vernon Supp. 2002).
7. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.